SCARCELLA ROSEN & SLOME LLP
Counsel to Elyse, Linda, Helena, Robin and
Sharon Blechman, Plaintiffs
333 Earle Ovington Boulevard, Ninth Floor
Uniondale, New York 11533
Telephone: (516) 227-1600
Facsimile: (516) 227-1601
Louis A. Scarcella (LS-3479)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

|  |  |  |
|---|---|---|
| | : | Chapter 11 |
| IN RE TL ADMINISTRATION | : | |
| CORPORATION, <u>et al</u>. (f/k/a TWINLAB | : | |
| CORPORATION, <u>et al</u>.), | : | |
| | : | |
| | : | Case No. 03-15564 (CB) |
| Debtors. | : | (Jointly Administered) |
| | : | |
| | : | |
| | : | |

------------------------------------------------------x

|  |  |  |
|---|---|---|
| BRIAN BLECHMAN, ROBIN | : | |
| BLECHMAN, DEAN BLECHMAN, | : | |
| SHARON BLECHMAN, NEIL | : | |
| BLECHMAN, HELENA BLECHMAN, | : | |
| STEVE BLECHMAN, ELYSE | : | |
| BLECHMAN, ROSS BLECHMAN AND | : | |
| LINDA BLECHMAN | : | |
| | : | |
| Plaintiffs, | : | Adv. Pro. No. 04-02323(CB) |
| v. | : | (Procedurally Consolidated with |
| | : | Adversary Proceeding No. 04-02334(CB) |
| TL ADMINISTRATION CORP. (F/K/A | : | |
| TWINLAB CORPORATION, | : | |
| INC.) AND TL ADMINISTRATION, INC. | : | |
| (f/k/a/ TWIN LABORATORIES, | : | |
|  INC.), THE OFFICIAL COMMITTEE OF | : | |
| UNSECURED CREDITORS | : | |
| Defendants. | : | |

------------------------------------------------------ x

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION OF ROBIN
BLECHMAN, SHARON BLECHMAN, HELENA BLECHMAN, ELYSE
BLECHMAN AND LINDA BLECHMAN FOR PARTIAL SUMMARY
<u>JUDGMENT UNDER FEDERAL RULE OF BANKRUPTCY PROCEDURE 7056</u>**

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ................................................................................................ 1

PROCEDURAL BACKGROUND.......................................................................................... 3

FACTUAL BACKGROUND.................................................................................................. 4

**I.** STANDARD FOR SUMMARY JUDGMENT .......................................................... 7

**II.** THE SECURED CREDITORS ARE SUBROGATED  TO CIT'S RIGHTS
AND HOLD AN ALLOWED, UNAVOIDABLE LIEN  ON THE
DEBTORS' ASSETS THAT SECURES THEIR CLAIM ....................................... 8

    A.    Requirements of Section 509 of the Bankruptcy Code.......................... 8

    B.    The Secured Creditors are "Liable With" the Debtor on CIT's Claim.................. 9

    C.    Secured Creditors Paid CIT's Claim .................................................. 12

    D.    Nature and Extent  of Secured Creditors' Subrogation Rights............................. 13

    E.    JPMorgan Chase Bank v. Cook ......................................................... 14

CONCLUSION........................................................................................................................ 16

## TABLE OF AUTHORITIES

### FEDERAL CASES

**Page**

In re Agrownautics, Inc.,
    125 B.R. 350 (Bankr. D. Conn. 1991) .........................................................................11

Celotex Corp. v. Catrett,
    477 U.S. 317, 106 S.Ct. 2548 (1986) ..........................................................................7

In re Chateaugay Corp.,
    89 F.3d 942 (2d. Cir. 1996)...................................................................................8, 13

In re Daley (Greenfield, Stein & Senior, LLP v. Daley),
    222 B.R. 44 (Bankr. S.D.N.Y. 1998)............................................................................8

Glade Springs, Inc.,
    826 F.2d 440 (6th Cir. 1987) ..................................................................................8, 13

Hamada v. Far East National Bank
    (In re Hamada), 291 F.3d 645 (9th Cir. 2002)............................................................11

JPMorgan Chase Bank v. Cook,
    2004 WL 324872 (S.D.N.Y. Feb. 20, 2004).........................................................7, 14

In re Kaiser Steel
    89 B.R. 150 (Bankr. D. Colo. 1988) .........................................................................15

NLRB v. Amax Coal Co.,
    453 U.S. 322 (1981).................................................................................................8

Netrix Leasing, LLC v. K.S. TeleCom, Inc.,
    2001 WL 228362 (S.D.N.Y. Mar. 7, 2001) ................................................................7

In re Robbins International, Inc.,
    275 B.R. 456 (S.D.N.Y. 2002).................................................................................8

Shropshire, Woodlife & Co. v. Bush
    204 U.S. 186 (1907)................................................................................................13

Slamans v. First National Bank & Trust Co. (In re Slamans),
    69 F.3d 468 (10th Cir. 1995) ...................................................................................11

Tudor Development Group, Inc. v. United States Fidelity and Guaranty,
    968 F.2d 357 (3d Cir. 1992)................................................................................11, 15

## TABLE OF AUTHORITIES
### (cont'd)

United States v. All Funds on Deposit
   955 F. Supp 23, 26 (E.D.N.Y. 1997) ........................................................................ 12

In re Wingspread Corp.,
   116 B.R. 915 (S.D.N.Y. 1990)................................................................................8, 13

Carol Ruth, Inc. v. Provident Life and Accident Ins. Co.,
   Dkt. No. 90 Civ. 2400 (SWK)(LB), 1995 WL 130530
   (S.D.N.Y. Mar. 24, 1995) ..........................................................................................15

## STATE CASES

Gerseta Corp. v. Equitable Trust Co. of N.Y.,
   241 N.Y. 418 (1926) ...................................................................................................8

In re Hughes' Estate,
   347 N.Y.S.2d 227 (Sur. Ct. 1973)...............................................................................12

Inda v. Inda,
   288 N.Y. 315 (1942) ...................................................................................................12

Parry v. Parry,
   461 N.Y.S.2d 616 (4th Dep't 1983) ............................................................................13

Reardon v. Joffe,
   269 N.Y.S.2d 635 (1st Dep't 1966)..............................................................................12

Walsh v. Walsh,
   290 N.Y.S.2d 115 (2d Dep't 1968) .............................................................................13

## FEDERAL STATUTES

11 U.S.C. § 509...............................................................................................................3, 9

Fed. R. Bankr. P. 7001 .......................................................................................................1

Fed. R. Bankr. P. 7056.............................................................................................1, 10, 12

Fed. R.Bankr. P. 7054.......................................................................................................16

124 Cong. Rec. H 11,095 ....................................................................................................9

H.R. No. 95-595, 95th Cong., 1st Sess. 358-9.....................................................................9

S.R. No. 95-989, 95th Cong., 2d Sess. 73-4……………………………………………9

**TABLE OF AUTHORITIES**
**(cont'd)**

## STATE STATUTES

N.Y. U.C.C. § 5-117 ...............................................................................................10, 11, 16

N.Y.S.B.A. Committee Report on N.Y. U.C.C. § 5-117 ...................................................15

New York State Banking Law § 675 ................................................................................13

Cal. U. Com. Code § 5117...............................................................................................11

Conn. Gen. Stat. § 42a-5-117...........................................................................................11

12A Okla. St. § 5-117 ......................................................................................................11

## MISCELLANEOUS

Restatement of the Law Third, Suretyship § 1 .................................................................11

24 N.Y. Jur.2d, Cotenancy and Partition, § 32 ...........................................................12, 13

Plaintiffs Robin Blechman, Sharon Blechman, Helena Blechman, Elyse Blechman and Linda Blechman (collectively, the "Secured Creditors")[1] respectfully submit this memorandum of law in support of their motion for partial summary judgment under Rule 56 of the Federal Rules of Civil Procedure (made applicable by Rule 7056 of the Federal Rules of Bankruptcy Procedure) on the Third Claim for Relief under the "Complaint for Declaratory Judgment under Federal Rules of Bankruptcy Procedure 7001(2) and (9)," dated February 6, 2004 (the "Complaint") and an order declaring that they are subrogated to the rights of The CIT Group/Business Credit, Inc. pursuant to Section 509(a) of the Bankruptcy Code and, in that capacity, hold an allowed secured claim in the amount of $7.5 million (plus interest, costs and expenses), which is not subject to recharacterization, subordination, avoidance or otherwise subject to disallowance.

### Preliminary Statement

TL Administration Inc. (f/k/a Twin Laboratories, Inc.) ("TLI") entered into a prepetition credit facility with The CIT Group/Business Credit, Inc. (as Lender and agent for itself and certain other lenders, collectively, "CIT").  TLI's obligation to CIT under the prepetition facility was secured by first priority liens on substantially all of its assets and the assets of TL Administration Corp. (f/k/a TwinLab Corporation, Inc.) ("TLC", and together with TLI, the "Debtors").  As part of the loan transaction, CIT required that the Secured Creditors (and their respective husbands) guarantee $15 million of TLI's obligations with the option of arranging for a $15 million irrevocable, stand-by letter of credit ("L/C") to be issued for CIT's benefit in the event that TLI failed to repay the loan.  The Secured Creditors arranged for Citibank, N.A.

---

[1]     Although the Blechmans (other than the Secured Creditors) are not parties to this motion, they hereby reserve their rights with respect to equitable subrogation and all other issues raised herein.

("Citibank") to issue the L/C.  Citibank, in turn, required the Secured Creditors (and their respective husbands) to pledge collateral to reimburse Citibank in the event that the L/C was drawn by CIT.  The Secured Creditors (and their husbands) pledged certain assets as such collateral to Citibank.

Shortly after the bankruptcy cases were filed, TLI obtained post-petition financing from CIT.  CIT's claims were fully satisfied on or about December 19, 2003, as a result of payment from two separate sources: (i) $14.2 million from the proceeds of a sale of certain of the Debtors' assets and (ii) $15 million from the L/C proceeds.[2]  When the L/C was drawn, Citibank possessed its collateral, which included $7.5 million in cash and other liquid investments belonging to the Secured Creditors.  As a result of satisfying the Debtors' obligation to CIT, the Secured Creditors have a right of subrogation under section 509 of the Bankruptcy Code.  The right of subrogation permits the Secured Creditors to step into CIT's shoes and enforce CIT's rights and remedies against the Debtors to the extent of their payment of $7.5 million (plus interest and fees).  In that capacity, the Secured Creditors (like CIT) hold a valid, non-avoidable, first-priority lien on substantially all of the Debtors' assets that secure their claim of at least $7.5 million.

The Creditors' Committee has filed an adversary proceeding seeking, among other things, to: (i) recharacterize the secured claim of the Secured Creditors (and their husbands) arising under the "Reimbursement Agreement," dated March 29, 2001 (the "Reimbursement Agreement"), pursuant to which the Debtors agreed to reimburse the Secured Creditors (and their

---

[2]     The Secured Creditors (and their husbands) reserve any and all of their rights and remedies respecting the draw on the L/C, including, without limitation, any and all of their rights to assert that  at the time of the draw on the L/C, all of the "Obligations" (as that term is defined in the Prepetition Facility) to CIT for which the L/C provided credit support had been paid in full under the "roll-up" provisions contained in the post-petition financing agreement and the Final DIP Order.

husbands) in the event that CIT drew on the L/C; (ii) equitably subordinate the secured claim of

the Secured Creditors (and their husbands) arising under the Reimbursement Agreement; and

(iii) otherwise void the Reimbursement Agreement and related liens granted by the Debtors to

secure their obligations thereunder.  The Creditors' Committee's suit addresses the rights of the

Secured Creditors (and their husbands) <u>arising under the Reimbursement Agreement</u>.  That suit

is irrelevant to this motion and does not preclude this Court from granting summary judgment

because the Secured Creditors have subrogation rights against the Debtors that are separate and

distinct from their contractual rights under the Reimbursement Agreement (regardless of its

validity or the priority of the claims asserted thereunder).  The Creditors' Committee's allegations

regarding the Reimbursement Agreement have no relevance to the Secured Creditors' entitlement

to recover against the Debtors' estates while standing in the shoes of CIT, as subrogee.

### Procedural Background

TLI and TLC each filed a petition for relief under Chapter 11 of the Bankruptcy Code on

September 4, 2003.   An official committee of unsecured creditors (the "<u>Creditors' Committee</u>")

was appointed by the U.S. Trustee in the Chapter 11 cases on September 17, 2003.

On February 6, 2004, Brian Blechman, Dean Blechman, Neil Blechman, Steve

Blechman, Ross Blechman and their wives, Robin Blechman, Sharon Blechman, Helena

Blechman, Elyse Blechman and Linda Blechman (collectively, the "<u>Blechmans</u>") commenced

this adversary proceeding (the "<u>Declaratory</u> <u>Judgment</u> <u>Action</u>") against TLI and TLC seeking a

declaratory judgment that, among other things:  (i)  the Reimbursement Claim (as defined in the

Complaint) is legal, valid, binding, perfected, not subject to recharacterization, subordination,

avoidance or otherwise subject to disallowance, in whole or in part, and shall not be subject to

any further challenge, and (ii) the Blechmans (jointly and severally) hold an allowed secured

claim for $15 million (plus interest, costs and expenses) arising under 11 U.S.C. § 509(a) and

3

common law principles of equitable subrogation, and such claim is not subject to recharacterization, subordination, avoidance or otherwise subject to disallowance, in whole or in part, and shall not be subject to further challenge.

On February 11, 2004, the Creditors' Committee was authorized to commence an adversary proceeding to pursue certain claims on TLC's behalf against, among others, the Blechmans. The Creditors' Committee commenced an adversary proceeding (the "Committee Adversary Proceeding") and filed their Complaint on February 13, 2004 (the "Committee Complaint") alleging claims against, among others, the Blechmans for equitable subordination, recharacterization, breach of fiduciary duty, preference and fraudulent transfer.

The Declaratory Judgment Action and the Committee Adversary Proceeding were procedurally consolidated for purposes of discovery and trial by order dated March 26, 2004.

## FACTUAL BACKGROUND

A.    Prepetition Facility and L/C Arrangement

TLI and CIT entered into a Financing Agreement, dated March 29, 2001 (as amended from time to time, the "Prepetition Facility") for financing in the maximum aggregate principal amount of $60 million. See Statement of Undisputed Material Facts[3] at ¶ 7. TLI's obligations under the Prepetition Facility were secured by liens on substantially all of the Debtors' assets. See id. at ¶ 8.

As a condition to the Prepetition Facility, the Secured Creditors (and their husbands) provided credit support in the amount of $15 million to CIT in the event that the Debtors failed

---

[3]    "Statement of Undisputed Material Facts" refers to the Statement of Undisputed Material Facts in Support of Joint Motion of Robin Blechman, Sharon Blechman, Helena Blechman, Elyse Blechman and Linda Blechman for Partial Summary Judgment Under Federal Rule of Bankruptcy Procedure 7056 and to the documents referenced therein.

to repay their obligations.  See id. at ¶ 9.  As required, the Secured Creditors (and their husbands) arranged for Citibank to issue the L/C to CIT.  See id. at ¶ 10.[4]  Citibank required that the Secured Creditors (and their husbands) pledge collateral in the event that the L/C was drawn by CIT.  See id. at ¶ 13.  The Secured Parties established an account (the "Pledged Account") at Salomon Smith Barney into which they deposited securities with an aggregate value in excess of $20 million (the "L/C Collateral"), and granted to Citibank a security interest in the Pledged Account, the L/C Collateral, and proceeds thereof.  See id.

The sources of the L/C Collateral were five accounts at Salomon Smith Barney that had been previously established by each of (a) Brian Blechman and Robin Blechman, (b) Dean Blechman and Sharon Blechman, (c) Neil Blechman and Helena Blechman, (d) Steve Blechman and Elyse Blechman, and (e) Ross Blechman and Linda Blechman, respectively, as joint tenants with the right of survivorship (collectively, the "Joint Accounts").  See id. at ¶ 14.

B.     DIP Loan

By an order dated September 25, 2003 (the "Final DIP Order") the Debtors obtained postpetition financing from CIT in a principal amount of up to $35 million. See id. at ¶ 15.  The DIP Loan authorized a so-called "roll-up" of the Pre-Petition Facility, which permitted the Debtors to use the DIP Loan to pay the balance due under the Pre-Petition Facility.  See id.  The Final DIP Order provided that all challenges to CIT's claims and liens had to be commenced within 75 days of the Creditors' Committee's retention of counsel. See id. at ¶ 16.  No challenge was made.  See id. at ¶ 17.  As a result, CIT's claims and liens are legal, valid, perfected, enforceable and unavoidable for all purposes.

---

[4]      Prior to the issuance of the L/C, Ross Blechman and Dean Blechman had entered into the Guaranty (Blechmans), dated March 29, 2001 (the "Guaranty"), pursuant to which Ross Blechman and Dean Blechman had guaranteed the payment of the Debtors' obligations under the Prepetition Facility in the maximum amount of $15 million.  See id. at ¶ 11.  The Guaranty provided that it would terminate upon delivery to CIT of one or more letters of credit aggregating $15 million.  See id.

C.     Asset Sale

The Debtors sold substantially all of their respective assets (excluding assets relating to Ephedra based products) to Ideasphere, Inc. on December 19, 2003.  See id. at ¶¶ 19-20.  The sale generated net cash proceeds of $49.2 million.  See id. at ¶ 20.  CIT's claims (which it calculated to be $29,275,258) were fully satisfied on or about December 19, 2003, as a result of payment from two separate sources: (i) $14,275,258 from the proceeds of a sale of certain of the Debtors' assets and (ii) $15 million from the L/C proceeds.  See id. at ¶¶ 22-24.  When the L/C was drawn, Citibank possesed the Secured Creditors' assets that were in the Pledged Account. See id. at ¶ 25.

D.     Secret Side-Agreement Between Creditors' Committee and CIT

The sale to Ideasphere generated $49.2 million in net cash proceeds, which were more than sufficient to satisfy CIT's claim of approximately $28.2 million.  See id. at ¶¶ 20-21.  Had CIT been paid from the asset sale proceeds (and not drawn on the L/C), the Creditors' Committee would have been unable to sue the Secured Creditors (and their husbands) for recharacterization and equitable subordination.  The Creditors' Committee, therefore, sought to have CIT draw on the L/C rather than look to the sale proceeds for full payment.  By agreement dated December 22, 2003, the Creditors' Committee agreed to release CIT from any challenge to the amount, extent and validity of CIT's liens and claims provided that CIT agreed to draw on the L/C.  See id. at ¶ 26.  The agreement was not presented for this Court's approval.  See id. at ¶ 27.

# I.

## STANDARD FOR SUMMARY JUDGMENT

Under Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Bankr. P. 7056 (incorporating by reference Fed. R. Civ. Proc. 56(c)). Summary judgment is appropriate when there are no genuine issues of material fact in dispute and when, viewing the evidence in a light most favorable to the nonmoving party, no reasonable trier of fact could disagree as to the outcome of the case. JPMorgan Chase Bank v. Cook, 2004 WL 324872 at *4 (S.D.N.Y. Feb. 20, 2004) citing Nabisco, Inc. v. Warner-Lambert Co., 220 F.3d 43, 45 (2d Cir. 2000).

To survive a motion for summary judgment, the non-moving party must come forward with specific evidence "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 2550 (1986). See also Netrix Leasing, LLC v. K.S. TeleCom, Inc., 2001 WL 228362 at *3 (S.D.N.Y. Mar. 7, 2001) ("once a motion for summary judgment is made and supported, the burden then shifts to the non-moving party to set forth specific facts that show that there is a genuine issue to be tried.").

As demonstrated below, the Secured Creditors are entitled to be subrogated to CIT's rights because there are no genuine issues of material fact that could be reasonably disputed and no reasonable trier of fact could disagree with such legal conclusion.

7

## II.

### THE SECURED CREDITORS ARE SUBROGATED
### TO CIT'S RIGHTS AND HOLD AN ALLOWED, UNAVOIDABLE LIEN
### ON THE DEBTORS' ASSETS THAT SECURES THEIR CLAIM

By virtue of their payment of the Debtors' obligation to CIT, the Secured Creditors are

subrogated to CIT's rights and liens and, as a result thereof, hold an allowed, unavoidable lien on

the Debtors' assets securing their claim of at least $7.5 million.

### A.  Requirements of Section 509 of the Bankruptcy Code

Subrogation is an equitable remedy that permits one who pays another's debt to stand in

the shoes of the latter party and assert whatever rights that party held.  See In re Chateaugay

Corp., 89 F.3d 942, 947 (2d Cir. 1996).  Subrogation rights asserted in bankruptcy cases are

governed by Section 509 of the Bankruptcy Code.  Id. at 497.[5]  Section 509 provides, in relevant

part, that "an entity that is liable with the debtor on, or that has secured, a claim of a creditor

against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the

---

[5]      See also In re Robbins International, Inc., 275 B.R. 456, 470 (S.D.N.Y. 2002); cf. In re Daley (Greenfield,
Stein & Senior, LLP v. Daley), 222 B.R. 44, 46 (Bankr. S.D.N.Y. 1998); but see In re Wingspread Corp.,
116 B.R. 915 (S.D.N.Y. 1990), aff'd mem., 992 F.2d 319 (2d Cir. 1993) (predating enactment of NYUCC
§ 5-117).  Outside the Second Circuit, however, there is disagreement as to whether subrogation rights in
the bankruptcy context are governed exclusively by § 509 or whether the party seeking subrogation under
§ 509 must also satisfy the requirements of equitable subrogation under applicable state law.  Compare
Hamada, 291 F.3d 645 (9th Cir. 2002) (interpreting § 509 and state law) and In re Glade Springs, Inc., 826
F.2d 440 (6th Cir. 1987) (analysis did not mention § 509).  In addressing this very issue, the Second Circuit
Court of Appeals held that the "Bankruptcy Code and not the law of equity" governs subrogation.
Chateaugay, 89 F.3d at 947.  The court, however, then noted that "it is nonetheless familiar law that
'[w]here Congress uses terms that accumulated settled meaning under either equity or common law, a court
must infer, unless the statute dictates otherwise, that Congress means to incorporate the established
meaning of these terms.'"  Id. quoting NLRB v. Amax Coal Co., 453 U.S. 322, 329 (1981). "Without a
specific statutory definition of subrogation, principles of equitable subrogation provide a background for
analysis of the Code."  In any case, to the extent, if any, that the common law test for equitable subrogation
applies, the Secured Creditors satisfy it.  To satisfy such test under New York law, the movant must show
that it made a payment or its property was applied to the debt of another, such payment was not voluntary,
and that it held superior equities and did not have unclean hands.  See Gerseta Corp. v. Equitable Trust Co.
of N.Y., 241 N.Y. 418, 425-26 (1926) (essential prerequisite to right of subrogation is payment).  Here, the
Secured Creditors' property was applied to satisfy the Debtors' obligations to CIT through the application of
the L/C proceeds, and such application was involuntary – the L/C was required as a condition precedent to
the funding of the Prepetition Facility and was irrevocable once issued.  See Gerseta, 241 N.Y. at 425-26
(Subrogation is appropriate when payment is made under compulsion or for protection of interest of party
making payment).  Moreover, there are no allegations in the Committee's Complaint that the Secured
Creditors committed any wrongdoing such that they have inferior equities or unclean hands.

extent of such payment."  11 U.S.C. § 509(a).  Under the plain language of the Bankruptcy Code, an entity is subrogated to the rights of a creditor if it:  (1) "is liable with the debtor on" (or has secured); (2) a claim of a creditor against the debtor; and (3) "pays such claim."  Id.  As demonstrated below, the requirements of section 509(a) are satisfied because the Secured Creditors are "liable with" the Debtors on  CIT's claim against the Debtors and the Secured Creditors' assets were used to pay no less than $7.5 million of such claim.

### B.   The Secured Creditors are "Liable With" the Debtor on CIT's Claim

The threshold issue under Section 509(a) is whether the Secured Creditors are "liable with" the Debtors on the claim of CIT against the Debtors.  The language of the statute itself is not limiting – it allows any "entity" liable with the debtor to recover. 11 U.S.C. §  509(a).  This concept is borne out by the legislative history of Section 509 which refers to certain types of secondary obligors that typically are co-liable and generally have subrogation rights, such as a "surety, guarantor or co-maker."  See H.R. No. 95-595, 95th Cong., 1st Sess. 358-9 (1977); S.R. No. 95-989, 95th Cong., 2d Sess. 73-4 (1978).  The legislative history also provides:  "Section 509(a) states a general rule that a surety or co-debtor is subrogated to the rights of a creditor assured by the surety or co-debtor to the extent the surety or co-debtor pays such creditor."  See 124 Cong. Rec. H 11,095 (Sept. 28, 1978); S 17,411-12 (Oct. 6, 1978).  The foregoing references to co-debtor, surety, guarantor and co-maker are illustrative and not exhaustive.  However, the Bankruptcy Code does not define the phrase "liable with the debtor." The meaning of the phrase "liable with" must therefore be interpreted with reference to applicable non-bankruptcy law.  Here, the applicable non-bankruptcy law is the law of the State of New York because, among

other reasons, the L/C provides that it is governed by New York law. See Scarcella Decl.[6]

Exhibit 3 at 3.

The Secured Creditors are "liable with" the Debtor on CIT's claims because under

Section 5-117 of New York's Uniform Commercial Code ("NYUCC"), the Secured Creditors (as

applicants of the L/C) are deemed to be "secondary obligors."   NYUCC § 5-117(a) and (b).

Article 5 of the NYUCC governs letters of credit and section 117 is entitled "Subrogation of

Issuer, Applicant and Nominated Persons."  Section § 5-117 provides, in pertinent part:

> (a)    An issuer that honors a beneficiary's presentation is
> subrogated to the rights of the beneficiary to the same extent as if
> the issuer were a secondary obligor of the underlying obligation
> owed to the beneficiary and of the applicant to the same extent as
> if the issuer were the secondary obligor of the underlying
> obligation owed to the applicant.
>
> (b)    An applicant that reimburses an issuer is subrogated to the
> rights of the issuer against any beneficiary, presenter, or nominated
> person to the same extent as if the applicant were the secondary
> obligor of the obligations owed to the issuer and has the rights of
> subrogation of the issuer to the rights of the beneficiary stated in
> subsection (a) of this section.

Thus, New York State law establishes unequivocally that under section 5-117(a),

Citibank (as L/C issuer) is subrogated to all of the rights of CIT (as L/C beneficiary), and under

section 5-117(b), the Secured Creditors, (as L/C applicants) who have reimbursed Citibank, are

subrogated to, and entitled to exercise, Citibank's subrogation rights (i.e., CIT's rights) against

the Debtors.

NYUCC § 5-117 was enacted to deal with a line of cases holding that an issuer of a letter

of credit is not entitled to subrogation because a letter of credit arrangement creates a

---

[6]    "Scarcella Decl." refers to the "Declaration of Louis A. Scarcella In Support of Joint Motion of Plaintiffs
Robin, Sharon, Helena, Elyse and Linda Blechman for Partial Summary Judgment Under Fed. R. Bankr. P.
7056, dated April 15, 2004" filed and served contemporaneously herewith.

relationship between the issuer and creditor that is independent of a debtor's obligation to the creditor.  See, e.g., Hamada v. Far East Nat'l Bank (In re Hamada), 291 F.3d 645, 650 (9th Cir. 2002) (applying California case law, court held that "issuers of letters of credit are not 'liable with' the debtor on the obligation owed to the creditor; therefore, letter of credit issuers are not eligible under § 509 for statutory subrogation in this context"); Slamans v. First Nat'l Bank & Trust Co. (In re Slamans), 69 F.3d 468, 475-76 (10th Cir. 1995) (applying Oklahoma law, court held that letter of credit issuer does not satisfy the plain language requirements of § 509); In re Agrownautics, Inc., 125 B.R. 350, 353 (Bankr. D. Conn. 1991) (relying on a superseded version of the Uniform Commercial Code ("UCC") and cases from other jurisdictions applying other state law, court held that bank that had issued letter of credit on debtor's behalf held to be not "liable with" debtor on obligation).  These cases have denied subrogation rights to letter of credit issuers on the basis that the issuer is not "liable with" debtor.[7]

The Official Comment to NYUCC § 5-117 provides the rationale for its adoption:

> By itself this section does not grant any right of subrogation.  It grants only the right that would exist if the person seeking subrogation 'were a secondary obligor.'  (The term 'secondary obligor' refers to a surety, guarantor, or other person against whom or whose property an obligee has recourse with respect to the obligation of a third party.  See Restatement of the Law Third, Suretyship § 1 (1995).) . . . In effect, the section does no more than to remove an impediment that some courts have found to subrogation because they conclude that the issuer's or other claimant's rights are "independent" of the underlying obligation.  If, for example, a secondary obligor would not have a subrogation right because its payment did not fully satisfy the underlying obligation, none would be available under this section.  The section indorses the [dissenting] position of Judge Becker in Tudor Dev. Group, Inc. v. United States Fidelity and Guar., 968 F.2d 357 (3rd Cir. 1991).

NYUCC § 5-117, Official Comment 1 (2004)(emphasis supplied).

---

[7]      California, Connecticut and Oklahoma have enacted their own versions of sections 5-117.  See Cal. U. Com. Code § 5117 (2004); Conn. Gen. Stat. § 42a-5-117 (2003); 12A Okla. St. § 5-117 (2004).

### C.  Secured Creditors Paid CIT's Claim

The Secured Creditors satisfy the final requirement of Bankruptcy Code Section 509 because through the draw of the L/C and the application of the assets in the Pledged Account, $7.5 million of their assets were applied to pay the Debtors' obligation to CIT.

The funds in the Pledged Account that were used to reimburse Citibank when the L/C was drawn (which in turn were used to pay the Debtors' obligation to CIT) were held in joint accounts maintained by each of the Secured Creditors and their respective husbands at Salomon Smith Barney.  See DiVenuto Aff. [8] ¶ 4 and Exhibits B-F.  The right of each Secured Creditor to the funds in the joint accounts located in New York is governed by New York law.  See United States v. All Funds on Deposit, 955 F. Supp. 23, 26 (E.D.N.Y. 1997) ("Since the funds at issue are held in the bank accounts located in New York, the requirements for establishing a possessory or ownership interest over the funds is determined by New York Law").

New York law provides that:  "[a] person opening a bank account in his or her name with another person, with the expressed intention of allowing each a present right to draw upon the account, with a survivorship in the balance remaining at the death of either, creates a joint tenancy in the account."  See 24 N.Y. Jur. 2d, Cotenancy and Partition, § 32 at 350 (1999) citing Inda v. Inda, 288 N.Y. 315, 318 (1942); In re Hughes' Estate, 347 N.Y.S.2d 227, 230 (Sur. Ct. 1973); Reardon v. Joffe, 269 N.Y.S.2D 635, 637 (N.Y. App. Div. 1st Dep't 1966).  New York law further provides further that there is a "presumption that joint savings accounts maintained in the names of two parties, payable to either or the survivor, are held as joint tenants by the parties named as depositors, whatever the source of the deposit" and each is entitled to one-half of the

---

[8]     "DiVenuto Aff." refers to the "Affidavit of Richard DiVenuto In Support of Joint Motion of Plaintiffs Robin, Sharon, Helena, Elyse and Linda Blechman for Partial Summary Judgment Under Fed. R. Bankr. P. 7056 sworn to on April 14, 2004" filed and served contemporaneously herewith.

assets held in joint tenancy.  See 24 N.Y. Jur. 2d, Cotenancy and Partition, § 32 at 350 (1999)

citing Parry v. Parry, 461 N.Y.S.2d 616, 618-19   (N.Y. App. Div. 4th Dep't 1983); Walsh v.

Walsh, 290 N.Y.S.2d 115, 117 (2nd Dep't 1968).[9]

Because the Secured Creditors owned 50% of the assets in their respective Joint

Accounts, their property was applied to satisfy the Debtors' obligations to CIT, and they are

entitled to subrogation.

### D.  Nature and Extent  of Secured Creditors' Subrogation Rights

The Secured Creditors, as subrogees, stand in CIT's shoes and enjoy the same rights and

remedies CIT had vis-à-vis the Debtors. Because CIT's liens and security interests have first

priority against the Debtors' estates, the Secured Creditors' subrogated claim against the Debtors

shares that same priority.  See Chateaugay, 89 F.2d at 947 (held, Aetna was subrogated to the

claims of the workers it paid, at the same priority level as those claims); see also In re

Wingspread Corp., 116 B.R. 915, 931 (Bankr. S.D.N.Y. 1990) ("priority is attached to the debt,

and not to the person of the creditor; to the claim, and not to the claimant" citing Shropshire,

Woodlife & Co. v. Bush, 204 U.S. 186, 189, 27 S. Ct. 178, 179, 51 L.Ed. 436 (1907) (further

citations omitted)); Glade Springs, 826 F.2d at 442.  Moreover, under the Final DIP Order, CIT's

claim is not subject to recharacterization, subordination, avoidance or otherwise subject to

disallowance.  See  Final DIP Order at 4.  As a result of the foregoing, the Secured Creditors are

entitled to a judgment declaring that as subrogees of CIT, the Secured Creditors hold an allowed

secured claim for $7.5 million (plus interest, costs and expenses) that is not subject to

recharacterization, subordination, avoidance or otherwise subject to disallowance.

---

[9]        Under New York State Banking Law § 675, there is a presumption that, absent clear evidence to the
contrary, the opening of a bank account by a husband and wife implies that they intended, no matter from
whom the funds were obtained originally, for each account holder to be jointly interested in the account.
NYS Banking L §§ 675(a) and (b) (McKinney's 2003).

13

### E.  JPMorgan Chase Bank v. Cook

Just two months ago, District Judge Lynch of the Southern District of New York granted summary judgment in a case arising out of Global Crossing's bankruptcy case that involved substantially similar circumstances.  See JPMorgan Chase Bank v. Cook, 2004 WL 324872 (Feb. 20, 2004 S.D.N.Y.) ("Cook").   The court's analysis and holding are particularly apt to this motion.

In Cook, an insider had obtained a $7.5 million personal loan from the Chase Manhattan Private Banking division (the "Lending Bank").  Global Crossing had obtained, for the insider's benefit, a letter of credit from the predecessor to JPM Chase Bank (the "LC Bank") to secure repayment of the insider's loan from the Lending Bank.  The LC Bank was entitled to seek reimbursement from the debtors in the event the letter of credit was drawn, and the insider agreed to reimburse Global Crossing for any amounts paid to the LC Bank as a result of a draw.  Global Crossing subsequently filed for bankruptcy, the insider defaulted by failing to pay off his loan, and the Lending Bank drew upon the letter of credit.  Id. at *2. The LC Bank was stayed from seeking reimbursement from the debtors in connection with the letter of credit draw.  Id. at *3.  As a result, the LC Bank sought to recover from the insider under the principles of equitable subrogation.

District Judge Lynch granted summary judgment and found that the LC Bank had a right of subrogation to the Lending Bank's right to recover against the insider.  First, it found that the letter of credit functioned as a guaranty, stating:

> [e]quitable subrogation essentially provides that the guarantor of another's obligation may seek reimbursement from the obligor.  It is relevant in the context of standby letters of credit, such as the Letter of Credit at issue here, because a standby letter of credit resembles, in some ways, a guarantee for another's loan.  That is because a beneficiary of a

14

> standby letter of credit [(here, Lending Bank)] may normally draw on
> the letter of credit issued by the issuer only after a third party defaults
> on a loan. See Carol Ruth, Inc. v. Provident Life and Accident Ins. Co.,
> Dkt. No. 90 Civ. 2400 (SWK)(LB), 1995 WL 130530 (S.D.N.Y. March
> 24, 1995).

JPM Chase, 2004 WL 324872 at *5.

Second, the district court found that the LC Bank had a right to recover from the insider

as the primary obligor due to the enactment of section 5-117 of the NYUCC. The court stated

that

> "[i]ssuers have sought to recover, not from the party that requested the
> letter of credit, but from the defaulting borrower. Courts grappling with
> this issue in the absence of a controlling statute have generally found that
> equitable subrogation does *not* apply to this situation because guarantees
> and letters of credit remain distinct in that an issuer's obligation under a
> letter of credit is primary, whereas a guarantor's obligation is secondary.
> Unlike a guarantor, who becomes subject to liability only if the borrower
> fails to fulfill its obligation to the borrower's creditor, an issuer of a letter
> of credit has a primary contractual obligation to the beneficiary, which is
> independent of the relationship between the beneficiary and its customer.
> See generally id. at 5. Thus, '[h]aving paid its own debt, as it has
> contractually undertaken to do, the issuer 'cannot then step into the shoes
> of the creditor to seek subrogation, reimbursement or contribution from
> the [beneficiary's customer].' Tudor Development Group, Inc. v. United
> States Fidelity & Guarantee Co., 968 F.2d 357 (3d Cir. 1992), quoting In
> re Kaiser Steel, 89 B.R. 150, 153 (Bankr. D. Colo.1988).

> In 2000, in response to the widely-accepted conclusion that the common-
> law remedy of equitable subrogation does not apply to standby letters of
> credit, the New York Legislature amended the Uniform Commercial Code
> provision on Letters of Credit to provide for subrogation in certain
> circumstances. See N.Y.S.B.A. Committee Report on N.Y. U.C.C. § 5-
> 117, McKinney's Uniform Commercial Code (2001). Section 5-117
> provides that: (a) An issuer that honors a beneficiary's presentation is
> subrogated to the rights of the beneficiary to the same extent as if the
> issuer were a secondary obligor of the underlying obligation owed to the
> beneficiary . . . (d) . . . [T]he rights of subrogation stated in subsection (a) .
> . . of this section do not arise until the issuer honors the letter of credit . . .'
> N.Y. UCC § 5-117(a), (d).

Cook, 2004 WL 324872 at *5 - 6.

Cook is substantially similar to this case, such that this Court should apply the district court's analysis to permit the Secured Creditors to be subrogated to CIT's rights against the Debtors.  In Cook, the LC Bank satisfied the primary obligor's obligation to the Lending Bank and the district court held that under NYUCC section 5-117(a), the LC Bank should be treated as a guarantor who was entitled to be subrogated to the Lending Bank's rights against the primary obligor.  Here, the Secured Creditors (like the LC Bank) satisfied the primary obligor's obligation to CIT (like the Lending Bank) and under NYUCC section 5-117(b), the Secured Creditors (like the LC Bank) should be subrogated to CIT's rights against the Debtors.

## CONCLUSION

For the reasons set forth above, the Secured Creditors respectfully request that the Court grant summary judgment on the Third Claim for Relief under the Complaint and permit the Secured Creditors to exercise their rights of subrogation to CIT's rights against the Debtors pursuant to Bankruptcy Rule 7054 (incorporating Fed. R. Civ. P. 54(b)), so that the judgment can be enforced at this time,[10] and grant such other and further relief as is just and proper.

Dated: Uniondale, New York
     April 15, 2004

          **SCARCELLA ROSEN & SLOME LLP**

          By:  /s/ Louis A. Scarcella
              Louis A. Scarcella (LS-3479)
              333 Earle Ovington Boulevard
              Ninth Floor
              Uniondale, New York 11533
              Telephone: (516) 227-1600

          Counsel to Elyse, Linda, Helena,
          Robin and Sharon Blechman

G:\BLECHMAN\Twinlab\LIT\Memo of Law.DOC

---

[10]    Rule 7054(a) of the Federal Rules of Bankruptcy Procedure incorporates sections (a) through (c) of Rule 54 of the Federal Rules of Civil Procedure.